**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carmen Nevarrez,        ) | No. CV 15-539-TUC-LAB |
|                         ) | |
| Plaintiff,   ) | **ORDER** |
|                         ) | |
| vs.                     ) | |
|                         ) | |
| Carolyn W. Colvin, Acting Commissioner) | |
| of Social Security,     ) | |
|                         ) | |
| Defendant.   ) | |
|                         ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g).  (Doc. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties.  (Doc. 13)

The court finds the ALJ's decision that Nevarrez can return to her previous work as a hotel housekeeper is supported by substantial evidence and free from legal error.


PROCEDURAL HISTORY

On May 31, 2012, Nevarrez filed for disability insurance benefits pursuant to Title II of the Social Security Act and supplemental security income pursuant to Title XVI.  (Tr. 211)  She was 38 years old.  *Id*.  Nevarrez alleged disability beginning on October 15, 2011, due to "thyroid problems, muscle pains, dizzy spells, nausea, depression, anxiety, bone pains, [and] heart problems."  (Tr. 211, 235)  Her claims were denied initially and upon reconsideration.

1  (Tr. 120-122; 123-126); (Tr. 130-132, 133-135)  Nevarrez requested review and appeared with
2  counsel at a hearing before Administrative Law Judge (ALJ) Larry Johnson on January 14,
3  2014. (Tr. 40-61)  In his decision, dated March 28, 2014, the ALJ found Nevarrez was not
4  disabled because she could return to her past work as a hotel housekeeper. (Tr. 27-35)

5  Nevarrez appealed and submitted an additional exhibit, but the Appeals Council denied
6  review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-5)
7  Nevarrez subsequently filed this action appealing that final decision. (Doc. 1)  She argues the
8  ALJ improperly evaluated her medical impairments such as her obesity and fibromyalgia. (Doc.
9  18)

10

11  <u>Claimant's Work History and Medical History</u>

12  Between August of 2005 and August of 2007, Nevarrez worked in a hotel as a
13  housekeeper. (Tr. 266)  Between September of 2007 and October of 2011, she worked as a
14  custodian at a casino. (Tr. 266)  She states she stopped working on October 15, 2011 "because
15  of my condition(s)." (Tr. 235)

16  In September of 2012, Nevarrez was examined by Jerome Rothbaum, M.D., for the
17  disability determination service. (Tr. 421)  Nevarrez's chief complaints were "depression,
18  thyroid problem, and heart problem." *Id*.  Rothbaum noted that her medical history including
19  a thyroidectomy, fracture of the right ankle, inguinal hernia repair, and gallbladder removal.
20  *Id*.  Rothbaum's impression reads as follows:  morbid obesity; status post thyroidectomy for
21  hyperthyroidism, current hypothyroidism being treated; depression/anxiety; hypertension;
22  GERD (gastroesophegeal reflux disease). (Tr. 423)  Rothbaum opined that Nevarrez's
23  conditions would not result in any functional limitations lasting for 12 continuous months. (Tr.
24  424)

25  In September of 2012, Valeria Malak, M.D, reviewed the medical record for the
26  disability determination service and offered an opinion of Nevarrez's physical limitations. She
27  opined that Nevarrez could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 76)  She
28  could sit, stand, and/or walk for 6 hours in an 8-hour day. (Tr. 76)  She had no postural or

1  environmental limitations. (Tr. 76) Malak's opinion suggests that Nevarrez can perform light
2  work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). In February of 2013, Karl K. Boatman, M.D.,
3  performed a similar review of the medical record and reached the same opinion of Nevarrez's
4  physical limitations. (Tr. 104-05)

5  In October of 2012, Nevarrez was examined by psychiatrist Hunter Yost, M.D., for the
6  disability determination service. (Tr. 429) Yost's diagnosis reads as follows: Axis I, mood
7  disorder with mild depressive features due to multiple chronic painful medical conditions; Axis
8  II, no diagnosis; Axis III, severe obesity, chronic endometriosis, back pain, hypertension,
9  hypothyroidism; Axis IV, social support with family; Axis V, current GAF (global assessment
10 of functioning) 61 to 70. (Tr. 430) Yost opined that Nevarrez had no mental limitations that
11 would be expected to last 12 continuous months. (Tr. 431)

12 In October of 2012, Alvin Smith, Ph.D., reviewed the medical record for the disability
13 determination service and offered an opinion of Nevarrez's psychological limitations. (Tr. 75)
14 Smith opined that Nevarrez suffered from an affective disorder, which was non-severe. (Tr. 74-
15 75) In February of 2013, Burnard Pearce, Ph.D., performed a similar review of the medical
16 record and reached the same opinion of Nevarrez's psychological limitations. (Tr. 102-03)

17 In May of 2013, Maria Robles, PA-C, completed a Medical Work Tolerance
18 Recommendation form. She opined that Nevarrez could perform sedentary work but not light
19 work. (Tr. 553) Nevarrez could stand for 60 minutes, sit for 30 minutes, and walk for 10
20 minutes. *Id*. She would be expected to miss an average of four workdays per month due to her
21 disabilities and normal illnesses. (Tr. 554)

22 Nevarrez appeared with counsel before the ALJ on January 14, 2014. (Tr. 42) Nevarrez
23 testified that she last worked at Casino Del Sol cleaning bathrooms and cleaning the casino
24 areas. (Tr. 45) She stopped work because the work "was very demanding physically" and she
25 "had to bend over a lot" and "was in a lot of pain." (Tr. 45)

26 She testified that she has pain in her hands, ankles, knees, and back. (Tr. 46) She takes
27 ibuprofen, Cymbalta, and codeine. (Tr. 46) Nevarrez stated that she can stand for 30 minutes
28 and sit for 45 minutes. (Tr. 51) She can walk for about 15 minutes. (Tr. 51)

1   Nevarrez lives with her husband and two children. (Tr. 53)  She does not go to church
2   or visit with friends on a regular basis because of her depression. (Tr. 53)

3   Kathleen McAlpine testified as a vocational expert. (Tr. 56) She stated that Nevarrez's
4   hotel housekeeping job was light, unskilled work. (Tr. 56) Her casino housekeeping job was
5   medium, unskilled work. (Tr. 56) McAlpine testified that a person limited to sedentary work,
6   who could stand for 60 minutes, sit for 30 minutes, and walk for 10 minutes at one time and
7   who would be expected to miss four days of work per month would be disabled. (Tr. 58-59)
8   A person who could perform light work and stand, walk, or sit for 6 hours in an 8-hour day
9   could work in Nevarrez's prior job as a housekeeper. (Tr. 59-60)

11  CLAIM EVALUATION

12  Social Security Administration (SSA) regulations require that disability claims be
13  evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter*
14  *v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of
15  whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4),
16  416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

17  If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step
18  two, which requires a determination of whether the claimant has a "medically severe impairment
19  or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a
20  determination at step two, the ALJ uses medical evidence to consider whether the claimant's
21  impairment more than minimally limits or restricts his or her "physical or mental ability to do
22  basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is
23  denied. *Id*.

24  Upon a finding of severity, the ALJ proceeds to step three, which requires a
25  determination of whether the impairment meets or equals one of several listed impairments that
26  the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20
27  C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's
28  impairment meets or equals one of the listed impairments, then the claimant is presumed to be

disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02.

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Nevarrez "has not engaged in substantial gainful activity since October 15, 2011, the alleged onset date." (Tr. 29) At step two, he found Nevarrez "has the following severe impairments: back disorder; hypothyroidism – medically controlled, status post thyroidectomy; hypertension – medically controlled; morbid obesity; and affective disorder secondary to medical condition." (Tr. 29)

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 5 -

At step three, the ALJ found Nevarrez's impairment did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 29-30)

The ALJ then analyzed Nevarrez's residual functional capacity (RFC). He found "that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). . . ." (Tr. 31) "Psychologically, she is able to perform simple, detailed and complex work tasks with low social interaction." *Id.*

At step four, the ALJ found Nevarrez was "capable of performing her past relevant work as a housekeeper in a hotel." (Tr. 34) Accordingly, he found that Nevarrez was not disabled from October 15, 2011 through the date of his decision, March 28, 2014. (Tr. 35)

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider

1 the entire record as a whole and may not affirm simply by isolating a specific quantum of
2 supporting evidence." *Id.*

3 The ALJ need not accept the claimant's subjective testimony of disability, but if he
4 decides to reject it, "[]he must provide specific, cogent reasons for the disbelief." *Lester v.*
5 *Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "Unless there is affirmative evidence showing that the
6 claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must
7 be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify
8 what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

10 DISCUSSION

11 Nevarrez argues first that the ALJ failed at step two of the disability determination to
12 include her fibromyalgia and sleep apnea in his listing of her severe impairments. (Doc. 18, p.
13 10)

14 "At step two of the five-step sequential inquiry, the Commissioner determines whether
15 the claimant has a medically severe impairment or combination of impairments." *Smolen v.*
16 *Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996). "[A]n impairment is not severe if it does not
17 significantly limit the claimant's physical ability to do basic work activities." *Id.* at 1290.
18 "Basic work activities" are "the abilities and aptitudes necessary to do most jobs" such as
19 "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20
20 C.F.R. §§ 404.1521(b), 416.921(b). "[T]he ALJ must consider the combined effect of all of
21 the claimant's impairments on her ability to function, without regard to whether each alone was
22 sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

23 "[T]he step-two inquiry is a de minimis screening device to dispose of groundless
24 claims." *Id.* "An impairment or combination of impairments can be found 'not severe' only if
25 the evidence establishes a slight abnormality that has 'no more than a minimal effect on an
26 individual[']s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th
27 Cir.1988)).

- 7 -

1    At step four, the ALJ must consider all of the claimant's impairments together, the severe
2 and the non-severe, and determine the claimant's residual functional capacity. 20 C.F.R. §§
3 404.1545(e), 416.945(e).
4    In this case, the ALJ found at step two that Nevarrez had the "following severe
5 impairments: back disorder; hypothyroidism – medically controlled, status post thyroidectomy;
6 hypertension – medically controlled; morbid obesity; and affective disorder secondary to
7 medical condition." (Tr. 29)  He did not include fibromyalgia or sleep apnea on that list.
8    Nevarrez argues the ALJ erred by failing to explain at step two why he believed those
9 conditions were not "severe impairments." (Doc. 18, p. 10)  The ALJ, however, did provide this
10 explanation at step four when discussing Nevarrez's RFC. (Tr. 33)  Accordingly, his failure to
11 discuss these conditions at step two was at most harmless error.  *See Lewis v. Astrue*, 498 F.3d
12 909, 911 (9th Cir. 2007).
13    Nevarrez further argues that the ALJ failed to properly evaluate her RFC. (Doc. 18, p.
14 12)  First, she argues that he failed to properly evaluate the effect of her obesity on her RFC in
15 accordance with SSR 02-1P. (Doc. 18, p. 14)
16    Social Security Ruling 02-1P explains how obesity should be evaluated in the sequential
17 evaluation disability process.  2002 WL 34686281.  At step four, the ALJ must consider
18 whether and to what extent the claimant's obesity affects her ability to perform work-related
19 activities.  "An individual may have limitations in any of the exertional functions such as sitting,
20 standing, walking, lifting, carrying, pushing, and pulling."  2002 WL 34686281, *6.  "It may
21 also affect ability to do postural functions, such as climbing, balance, stooping, and crouching."
22 *Id*.  "The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the
23 hands and fingers."  *Id*.  "The ability to tolerate extreme heat, humidity, or hazards may also be
24 affected."  *Id*.
25    In this case, the ALJ specifically considered Nevarrez's obesity and its effect on her
26 RFC.  He noted that Nevarrez is 5'9" tall and weighs 300 pounds. (Tr. 33)  She is therefore
27 classified as having Level III or "extreme" obesity.  *Id*.  The ALJ conceded that "it is likely her
28

obesity is contributing to her back pain, alleged fatigue, and dyspnea." *Id.* He concluded, however, that while these impairments affect her ability to work, they are not disabling.

The ALJ adopted the opinions of the disability determination physicians, Valeria Malak, M.D., and Karl K. Boatman, M.D. , who opined that Nevarrez's impairments restrict her to light work but are not disabling. (Tr. 76); (Tr. 104-05) The ALJ accorded these opinions "substantial weight" because they reflected a "careful examination of the medical evidence and all the other evidence in the record." (Tr. 34)

The ALJ's reliance on the opinions of Malak and Boatman was entirely proper. The ALJ is not a medical expert and may not offer his own expert evaluation of the raw medical data. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985); *Liskowitz v. Astrue*, 559 F.3d 736, 741(7th Cir. 2009); *Smith v. Colvin*, 2016 WL 4059627, at *3 (C.D. Cal. 2016); *see also Dumond v. Commissioner of Social Sec.*, 875 F.Supp.2d 500, 509 (W.D.Pa. 2012) (rejecting the Commissioner's argument that "an ALJ is not required to rely on a medical opinion in formulating a claimant's RFC."). Accordingly, he must rely on medical experts to evaluate the claimant's functional limitations. *Id.* Here, the ALJ relied on the only opinions in the record from an "acceptable medical source," those of Malak and Boatman. 20 C.F.R. §§ 404.1513, 416.913. The ALJ's reliance on their opinions was not error. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). The record also contains an opinion by Maria Robles, PA-C, who opined that Nevarrez could perform only sedentary work. (Tr. 553) Robles, however, is not a medical doctor, so her opinion is not accorded the same level of deference. 20 C.F.R. §§ 404.1513, 416.913; *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Nevarrez argues to the contrary that she displays many obesity related symptoms such as dyspnea, fatigue, limited mobility, lower extremity pain and edema. (Doc. 18, p. 16) She argues that the ALJ should accept her assertion that these impairments are disabling. The ALJ,

1 however, is not required to accept a claimant's subjective testimony of disability and may 2 discount it if he provides clear and convincing reasons for doing so. *See also Molina v. Astrue*, 3 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ is not required to believe every allegation of 4 disabling pain, or else disability benefits would be available for the asking.") (punctuation 5 modified). Here, the ALJ chose to reject her subjective testimony of disability because she was 6 receiving only conservative treatment from her physicians and her record of daily activities was 7 inconsistent with her testimony of disability.

8 The ALJ stated that Nevarrez has "received only modest treatment for her alleged 9 impairments." (Tr. 33) According to the medical record, her doctors have recommended only 10 conservative treatment for her obesity such as a low carbohydrate diet, exercise, and other 11 weight loss strategies. (Tr. 321, 435, 436) Moreover, the ALJ noted that "[s]he is not on a high 12 dosage of pain medication, and her doctor has prescribed it only as needed." *Id.* The ALJ may 13 discount a claimant's allegation of disabling pain if she has been prescribed only moderate 14 levels of pain medication. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have 15 previously indicated that evidence of 'conservative treatment' is sufficient to discount a 16 claimant's testimony regarding severity of an impairment.").

17 The ALJ also found that Nevarrez's record of daily activities is inconsistent with her 18 claim of disabling impairment. The ALJ noted that "[s]he is able to do self-care without 19 difficulty, prepare meals with her husband's help, sweep, mop, drive, go out twice a week, 20 handle money appropriately, and walk a block." (Tr. 33); (Tr. 260-61) Household activities 21 are not generally performed with the same persistence and pace required in the workplace, but 22 they may be considered by the ALJ in evaluating a claimant's subjective testimony of disability. 23 *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d, 595, 600 (9th Cir. 1999); *see, e.g.,* 24 *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (Where the claimant "indicated that she 25 was able to take care of her personal needs, prepare easy meals, do light housework, and shop 26 for some groceries," the court found that "[a]n ability to perform such activities may be seen as 27 inconsistent with the presence of a condition which would preclude all work activity.").

28

The ALJ's assessment of Nevarrez's RFC is supported by substantial evidence. His decision to discount Nevarrez's subjective opinion of disability was supported by clear and convincing evidence. She is receiving only conservative treatment from her physicians and her record of daily activities is inconsistent with her testimony of disability. And as the court discussed above, Nevarrez's subjective testimony of disability is contradicted by the opinion of the medical consultants, Malak and Boatman. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Nevarrez further argues that the ALJ failed to properly evaluate her fibromyalgia and the effect it has on her RFC. (Doc. 18, p. 16)

Fibromyalgia (FM) "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2P; 2012 WL 3104869, *2. "FM is a common syndrome." *Id*. "When a person seeks disability benefits due in whole or in part to FM, we must properly consider the person's symptoms when we decide whether the person has an MDI [medically determinable impairment] of FM." *Id*.

A diagnosis of FM may be found if the claimant has (1) "a history of widespread pain," (2) "at least 11 positive tender points," and (3) "evidence that other disorders that could cause the symptoms or signs were excluded."    2012 WL 3104869, *2-3. The diagnosis must be made by an acceptable medical source, a medical or osteopathic doctor. *Id*.

In this case, the ALJ rejected Nevarrez's claim that she suffers from fibromyalgia because she was "diagnosed with fibromyalgia by a physical therapist, and not a rheumatologist." (Tr. 32)  He further stated  "[t]here is no evidence of treatment for fibromyalgia." (Tr. 32)  Nevarrez, on the other hand, argues that the ALJ made a "clear error of fact" in his analysis.   (Doc. 18, p. 18) The medical record on this issue is somewhat confusing.

The record contains a "Physical Therapy Evaluation," dated April 8, 2013 and signed by Burton Ford, P.T., and Darren Bayliss, P.T., which states that Nevarrez "was recently

- 11 -

diagnosed" with fibromyalgia. (Tr. 552) The ALJ is correct in stating that a physical therapist is not an acceptable medical source and cannot establish fibromyalgia as a medically determinable impairment. SSR 12-2P; SSR 6-03p But he is incorrect in stating that these physical therapists made the diagnosis. They did not make the diagnosis; they merely treated her for that condition.

The medical record from Javier Rios, M.D., Nevarrez's treating physician, indicates that Nevarrez was prescribed Cymbalta "for fibromyalgia and depression." (Tr. 523, May 29, 2013); (Tr. 531, April 30, 2013) The ALJ therefore is not correct in stating that "there is no evidence of treatment for fibromyalgia." (Tr. 32) Rios apparently did treat her for fibromyalgia. There is, however, no indication in the medical record of how this diagnosis was made, and who made it. As a medical doctor, Rios is authorized to make a diagnosis of fibromyalgia provided he applies the protocol approved by the Commissioner. 2012 WL 3104869, *2-3. There is no indication in the medical record, however, that he did this.

The medical record contains no evidence that Nevarrez was ever diagnosed with fibromyalgia by an acceptable medical source in accordance with Social Security Rule 12-2P. *See* 2012 WL 3104869. Therefore, the ALJ's failure to include fibromyalgia as one of her medically determinable impairments was not error.

The court further observes that while the ALJ did not consider fibromyalgia to be a medically determinable impairment, he did evaluate Nevarrez's allegations of disabling pain and fatigue. Nevarrez believes these symptoms are caused by her fibromyalgia (or possibly her sleep apnea). The ALJ, on the other hand, believed these symptoms were probably caused by her obesity. But regardless of the source of these symptoms, the ALJ did consider what effect they might have on her ability to work. Therefore, even if the ALJ erred in evaluating Nevarrez's fibromyalgia diagnosis, this error did not materially affect the ALJ's evaluation of her RFC.

Nevarrez further argues that the ALJ failed to properly evaluate her sleep apnea. In the medical record there is a notation from cardiologist Tedd M. Goldfinger, D.O., from March 28, 2012, that "[t]he patient reports somnolence suggesting possible sleep apnea." (Tr. 322) In

December of 2012, Goldfinger notes that "[t]he patient gives a clear history of severe snoring, choking at night and witnessed apnea by her husband consistent with sleep apnea." (Tr. 437) He concludes, "[t]he patient has clear symptoms of sleep apnea." (Tr. 438) He states, "I will schedule the patient for a sleep study." (Tr. 438) He reports that a study was performed in December of 2012. (Tr. 435)

In his analysis of Nevarrez's RFC, the ALJ stated as follows: "She testified that she has sleep apnea and uses a CPAP [Continuous Positive Airway Pressure device] but there is no evidence of treatment for sleep apnea." (Tr. 33) Apparently, the ALJ found no evidence in the medical record to support Nevarrez's testimony that she was being treated with a CPAP, and therefore he did not consider sleep apnea to be a severe impairment. The ALJ did consider, however, what effect Nevarrez's fatigue has on her RFC. So even if the ALJ erred in evaluating Nevarrez's sleep apnea diagnosis, this error did not materially affect the ALJ's evaluation of her RFC, and the error is harmless.

Finally, Nevarrez argues that the ALJ erred at step five of the disability analysis by giving the vocational expert a hypothetical that assumed that she could perform light work. Nevarrez argues that the ALJ evaluation of her RFC was error, and she is unable to perform light work. It therefore follows that he should not have given the vocational expert a hypothetical assuming she *could* perform light work because this hypothetical did not accurately describe all her functional limitations. This court, however, finds that the ALJ's evaluation of her RFC was correct, and therefore his hypothetical to the vocational expert was not error.

The court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly,

IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED. The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED this 18th day of August, 2016.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge